**UNITED STATES of America**

v.

**Maria Rodriguez DE LAZO et al.**

**Appeal of Angel PEREZ in No. 73-1712.**

**Appeal of Joshua MOORE in No. 73-1793.**

**Nos. 73-1712, 73-1793.**

United States Court of Appeals, Third Circuit.

Argued April 4, 1974.

Decided May 30, 1974.

---

George J. Koelzer, Evans, Koelzer, Doyle & Marriott, Rumson, N. J., for appellant Perez.

Howard J. Diller, Diller & Schmukler, New York City, for appellant Moore.

Jonathan L. Goldstein, U. S. Atty., Richard S. Zackin, John J. Barry, Asst. U. S. Attys., Newark, N. J., for appellee.

OPINION OF THE COURT

Before VAN DUSEN, WEIS and GARTH, Circuit Judges.

VAN DUSEN, Circuit Judge.

This is an appeal by defendants, Angel Perez and Joshua Moore, from a conviction, after a jury trial, for conspiracy to import and distribute cocaine and for possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 2. At trial the Government introduced evidence to show that Perez and Moore were part of a conspiracy to manufacture cocaine outside of Bogota, Colombia, and to smuggle it into the United States for distribution. Perez was in charge of the manufacturing function, Lazo of the smuggling into the United States, and Moore and Walcott of the distribution within the United States. In furtherance of that conspiracy, 3885 grams of cocaine were brought into Newark airport on April 30, 1972, where it was seized by federal agents. Named in the indictment as co-conspirators were Maria De Lazo, Norma Hunter, George Walcott, Carrie Wilkerson, and Edelberto Esquijarosa.[1] Susan Boehlke and Mei Ling Moy were unindicted co-conspirators who were given immunity and testified for the Government at trial.

Appellants advance a number of arguments to support their claim that they are entitled to a judgment of acquittal or a new trial. After careful consideration, we find all of them to be without merit.

■ First, there is sufficient evidence on the record to permit the jury to infer that the cocaine which was seized from Maria Lazo's luggage at Newark airport came from the manufacturing establishment of Perez in Colombia.[2] Thus the jury could reason-

---

1. In addition to the conspiracy and possession counts, Lazo was charged with a violation of 18 U.S.C. § 924(c). At the time of trial, Esquijarosa was a fugitive and was severed from the case. During the course of the trial, co-defendants Wilkerson, Walcott, Lazo and Hunter pleaded guilty to the conspiracy count and were then severed from the trial.

2. (1) Both Susan Boehlke and Mei Ling Moy testified that they were recruited by Maria Lazo to go to Colombia in order to bring back cocaine which was to be manufactured

ably conclude that Perez was a member of the alleged conspiracy, in furtherance of which the cocaine was brought into Newark, and that he was an aider and abettor of Maria Lazo, whose constructive possession of the cocaine was, therefore, attributable to him. See Pinkerton v. United States, 328 U.S. 640, 646–647, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); United States v. Boyance, 329 F.2d 372, 375 (3d Cir.), cert. denied, 377 U.S. 965, 84 S.Ct. 1645, 12 L.Ed.2d 736 (1964); United States v. Malfi, 264 F.2d 147, 151–152 (3d Cir. 1959).

 Second, there is sufficient evidence to support the finding of the jury that Moore was also a member of that same conspiracy and that he was in constructive possession of the cocaine. The testimony of co-conspirators Susan Boehlke and Mei Ling Moy clearly establishes the existence of the alleged conspiracy and Moore's connection with it as one of the principal distributors of the cocaine after it arrived in the United States, and the evidence does not support Moore's contention that he withdrew from the conspiracy prior to the arrival of the cocaine in Newark. It is, of course, true that there must be independent evidence of Moore's participation in the conspiracy to permit the use against him of the declarations of his alleged co-conspirators. However, where, as here, the existence of the conspiracy is established by proof *aliunde*, slight evidence may be sufficient to connect a defendant with it. See, *e. g.*, United States v. Kenny, 462 F.2d 1205, 1226 (3d Cir.), cert. denied, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972); United States v. Bey, 437 F.2d 188, 190 (3d Cir. 1971). In the present case there was sufficient evidence of Moore's participation in the conspiracy apart from any declarations of co-conspirators,[3] and the trial court properly admitted into evidence against Moore the testimony of Susan Boehlke and Mei Ling Moy.[4]

there by Maria's husband, Angel Perez (N.T. 81, 590–91). (2) Both Susan and Mei Ling went to Colombia, where they, as well as Maria Lazo, watched and occasionally assisted Perez in the manufacturing operation (N.T. 121–24, 682–86). (3) Within a short time after the cocaine was produced, Maria arrived at Newark airport via Kennedy Airport, accompanied by Carrie Wilkerson ("Tina") and Norma Hunter ("Lisa") (N.T. 865–74). Both Susan and Mei Ling identified Tina and Lisa as women who also had been with Perez in Colombia and had been sent there for the express purpose of transporting Perez's cocaine into the United States (N.T. 92–101, 104–07, 128–30, 690–91). (4) Maria, Tina, and Lisa had arrived at Kennedy Airport from California (N.T. 869). Susan testified that while in Colombia, Maria had discussed the possibility of bringing Perez's cocaine to New York through California (N.T. 129). (5) Susan testified that the luggage in which the cocaine was found was the same luggage which Maria had with her while she was with Perez in Colombia (N.T. 296–97, 941–43, 949–51).

3. (1) Mei Ling Moy testified that just before Maria Lazo and Tina left for Colombia in January of 1972, Maria gave Mei Ling a note to deliver to Moore. Mei Ling met with Moore shortly thereafter, and he asked her how she knew Maria and engaged her in a discussion concerning cocaine. He offered to sell, and later did in fact sell, a quantity of cocaine to Mei Ling (N.T. 621–25). (2) BNDD agents testified that they observed Moore and other co-conspirators meet Maria Lazo, Tina, and Lisa when the three women arrived at Kennedy Airport from California. Moore accompanied the three women from Kennedy to Newark airport where the women's luggage had been sent, luggage which contained four kilos of cocaine (N.T. 865–74). (3) After his arrest and release on bail, Moore met with Susan Boehlke. Susan testified that, when she asked Moore how Tina and Lisa were doing, Moore told her the girls had "messed up" and that he himself was going to South America and take one or two girls with him (N.T. 284). Though Moore's conversation with Susan occurred after the conspiracy is alleged to have been in existence, it may constitute independent evidence of Moore's participation. See United States v. Ragland, 375 F.2d 471, 477 (2d Cir. 1967), cert. denied, 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed.2d 987 (1967).

4. There is likewise no merit in Moore's contention that, even granting the sufficiency of the non-hearsay evidence, the introduction of the declarations of his co-conspirators violated his right to confront the witnesses against him and deprived him of due process of law. See United States v. Kenny, supra, at 1218.

■ Third, there is no plain error in the trial court's charge to the jury (appellants having failed to object to the charge at the time it was given). See F.R.Crim.P. 52(a). The trial court's instruction on reasonable doubt was not reversible error, United States v. Restaino, 369 F.2d 544, 546 (3d Cir. 1966),[5] And the remainder of the charge, read as a whole, supported, rather than weakened, that instruction. In addition, there was no plain error in the trial court's instruction on the absence of an overt act requirement under 21 U.S.C. § 846, see Leyvas v. United States, 371 F. 2d 714, 717 (9th Cir. 1967), or on the *Pinkerton* doctrine, Pinkerton v. United States, *supra* at 646–647.[6]

All other contentions of appellants have been considered and rejected.[7]

Accordingly, the district court orders of judgment and commitment will be affirmed.

5. We agree that it would be preferable for the trial judge to have substituted for the last sentence in his charge, beginning on N. T. 1203, concerning reasonable doubt a sentence such as the following in § 11.01, p. 205, of Devitt & Blackmar, Federal Jury Practice and Instructions, 2d ed.:
"Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that you would be willing to rely and act upon it unhesitatingly in the most important of your own affairs."
See United States v. Stubin, 446 F.2d 457, 465 & n. 7 (3d Cir. 1971).

6. In the course of its charge on the substantive count of possession, the court instructed the jury as follows:
"[I]f you find that these defendants were members of the conspiracy alleged in Count 1, and if you find that the substantive offense of wilfully and knowingly having possession of cocaine with intent to distribute, as set forth in Count 2, was committed by one or more of the members of the conspiracy in furtherance of the conspiracy, then each of the defendants who was a member of the conspiracy at the time of the offense *is* guilty of the unlawful possession committed or done by any one of them." (N.T. 1231–32) (Emphasis added.)
Appellants point out that this instruction differs from that approved in *Pinkerton, supra* at 645 n. 6, in that the latter merely *permits* a jury to convict a member of a conspiracy of the substantive crimes committed by his coconspirators in furtherance of the conspiracy, whereas the instruction in this case *requires* such a conviction. If appellants had objected to the above-quoted instruction, there might be a basis for a reversal and a new trial. However, we note that the trial court instructed the jury that the "necessity of proof beyond a reasonable doubt extends and relates to each essential element of the crime charged" (N.T. 1203) and concluded its instruction on the *Pinkerton* doctrine by cautioning the jury as follows:

"I charge you, however, that with respect to the charges made in Count 2, that if you find a defendant not guilty of the conspiracy alleged in Count 1, then you cannot consider any of the testimony introduced concerning acts or any statements of other defendants in furtherance of the conspiracy in determining that particular defendant's guilt or innocence." (N. T. 1232)
We also note that the Supreme Court's opinion in *Pinkerton, supra* at 647, contains the following language:
"The criminal intent to do the act is established by the formation of the conspiracy. Each conspirator instigated the commission of the crime. The unlawful agreement contemplated ⋅ precisely what was done. It was formed for that purpose. The act done was in execution of the enterprise. The rule which holds responsible one who counsels, procures, or commands another to commit a crime is founded on the same principle. That principle is recognized in the law of conspiracy when the overt act of one partner in crime is attributable to all. . . . If . . . [an overt act] can be supplied by the act of one conspirator, we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the purpose of holding them responsible for the substantive offense."
In light of this language, and reading the charge as a whole, we do not believe that the trial court's *Pinkerton* instruction was plain error.

7. These include the following: (1) that the refusal of the trial judge to allow appellant Moore to explain the circumstances of an alleged prior inconsistent statement during cross-examination constitutes reversible error; (2) that the conduct of the prosecutor during appellant Moore's cross-examination and during summation deprived appellants of a fair trial. See F.R.Crim.P. 52(a).