**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Anthony Warren MARQUEZ, Defendant-Appellant.**

**No. 84–5161.**

United States Court of Appeals, Eleventh Circuit.

May 6, 1985.

Daniel H. Forman, McMaster, Forman & Miller, P.A., Miami, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Chris Mancini, Linda Collins-Hertz, Nancy L. Worthington, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before RONEY and TJOFLAT, Circuit Judges, and BROWN *, Senior Circuit Judge.

RONEY, Circuit Judge:

Convicted of conspiracy to distribute and possession with intent to distribute marijuana in violation of 21 U.S.C.A. §§ 955a(a) and 955c, Anthony Warren Marquez raises the single issue of whether the Government produced sufficient evidence to prove that the offenses with which he was charged occurred aboard a "vessel without nationality" under 21 U.S.C.A. § 955b(d). We affirm.

On May 13, 1983, the Coast Guard cutter DURABLE, conducting law enforcement surveillance off the coast of Mexico, spotted a vessel on radar and dispatched a helicopter to identify it. The vessel, a converted shrimper approximately 65 feet in length, was flying the British Union Jack. The vessel carried several antennas indicating the presence of a large amount of electronic equipment and had an unusually high water line painted close to the top of its hull. According to a Coast Guard officer's testimony, such vessels usually do not carry sufficient electronic equipment to require antennas, and water lines are commonly painted higher than normal to disguise the fact that a vessel is carrying a heavy cargo. Contrary to usual practice, no name was painted on the vessel, but the vessel carried three name boards, two on the superstructure and one on the stern, which identified it as the AFCOG 6. No home port was displayed.

Proceeding on an intercept course, the DURABLE began attempting to establish radio contact with the vessel, first in English, which produced no response, and then in Spanish, which elicited a reply. A person claiming to be the vessel's captain informed the Coast Guard that the vessel was named the AFCO 6, it was of British registry, its home port was "Britain," it carried a crew of seven Colombians, it was carrying from Aruba to Mexico about 95 bags of rice which had become wet and, therefore, the vessel was not completing its voyage but returning to Aruba. The purported captain provided an unspecified vessel registration number. Pointing out that his vessel was in international waters and claiming to be harming no one, he asked why the Coast Guard was intercepting the vessel.

The DURABLE sought and received through the Coast Guard operations center in Miami a statement of permission to board the vessel to verify its documentation pursuant to the United States-United Kingdom agreement on interdiction. The DURABLE finally intercepted the vessel between 50 and 100 miles from the nearest territorial waters. After several requests,

* Honorable John R. Brown, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

the vessel stopped and six of its crew members assembled on the fantail. The Coast Guard was informed that the seventh crew member, defendant Marquez, was sick, but upon instruction he came out of the pilothouse to join the others.

A party from the DURABLE boarded the vessel and conducted a security search. The ship's registration and documentation papers, which were not in English, identified it as the AFCO 6, while the name boards displayed by the ship added a "G" and identified it as the AFCOG 6. Documents for the vessel BLANQUITA, of Colombian registry, were located in the master's cabin, and that name was found on some of the radio equipment. In addition to the British flag, the flags of Colombia, Panama and Venezuela were found on board, but there was no indication that they had been used.

The Coast Guard boarding party attempted to verify the documents by checking the vessel's main beam number, which was never found. In the course of searching for the number, however, an officer discovered two burlap bags containing traces of a green leafy substance and bearing the odor of marijuana. Field testing for marijuana was positive. A search of the vessel revealed a hidden compartment which contained 577 bales of marijuana weighing approximately 30,000 pounds. The crew was arrested and brought back to the United States, where all but Marquez entered guilty pleas to marijuana charges. Marquez was charged under 21 U.S.C.A. § 955a(a), which provides:

> It is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States on the high seas, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance

and under § 955c, which proscribes the attempt or conspiracy to commit an offense under the above statute.

▮ Since the vessel was not a United States vessel, it would have to be subject to the jurisdiction of the United States to convict Marquez under these statutes. The term "vessel subject to the jurisdiction of the United States" is defined as:

> [A] vessel without nationality or a vessel assimilated to a vessel without nationality, in accordance with paragraph (2) of article 6 of the Convention on the High Seas, 1958.

21 U.S.C.A. § 955b(d). Article 6 of the Convention on the High Seas provides in pertinent part:

> 2. A ship which sails under the flags of two or more States, using them according to convenience, may not claim any of the nationalities in question with respect to any other State, and may be assimilated to a ship without nationality.

This Court has decided that 21 U.S.C.A. § 955a "properly extends the criminal jurisdiction of this country to any stateless vessel in international waters engaged in the distribution of controlled substances." *United States v. Knight*, 705 F.2d 432, 433 (11th Cir.1983); *United States v. Martinez*, 700 F.2d 1358, 1362 (11th Cir.1983); *United States v. Marino-Garcia*, 679 F.2d 1373, 1383 (11th Cir.1982), *cert. denied*, 459 U.S. 1114, 103 S.Ct. 748, 74 L.Ed.2d 967 (1983).

Marquez argues that there was insufficient evidence for the jury to find that the boat was "a vessel without nationality." The jury having been instructed only on the "vessel without nationality" portion of 21 U.S.C.A. § 955b(d), Marquez contends that his conviction cannot be sustained if the evidence only shows that the vessel was assimilated to a vessel without nationality as a result of flying flags of two or more nations according to convenience.

In reviewing this contention, we view the evidence together with all reasonable inferences in the light most favorable to the Government. *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Johnson*, 713 F.2d 654, 661 (11th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). The evidence need

only be such that a reasonable jury could have concluded that it established guilt beyond a reasonable doubt. *United States v. Vera,* 701 F.2d 1349, 1357 (11th Cir.1983).

 Considering only the evidence showing that the vessel was without nationality, we conclude that it was sufficient to support the jury's finding that the vessel was subject to the jurisdiction of the United States. Although Marquez contends the evidence showed only that the vessel was of British registry, the difference between the names AFCO and AFCOG defeats this claim.

The vessel was flying a British Union Jack and carried three detachable name boards showing its name as the AFCOG 6. When contacted by radio, the vessel's captain identified it as the AFCO 6 of British registry. The documentation papers found aboard the vessel were for a vessel named the AFCO 6. At trial the Government introduced documents from an agent of the Central Registrar of British Ships showing that the vessel AFCO 6 is of British registry. These documents specified the same official number, 317938, that was reflected in the certificate of British registry found aboard the vessel. The Government also introduced, however, a certificate of non-registration from the same agency showing that no registered vessel was named the AFCOG 6. This was the name displayed on the ship itself. Marquez minimizes the difference between the two names, but the fact remains that no British registry existed for a vessel with the name being displayed by the vessel in question. There is no evidence showing that the AFCO 6 and AFCOG 6 are the same vessel. Although registration documents for the AFCO 6 were on board, their significance was diluted by the presence of registration documents of another boat, the BLANQUITA, of Colombian registry. No main beam number was ever located aboard the vessel, so there was no proof that it bore the number of the AFCO 6, the boat shown to be of British registry. A reasonable jury could have concluded that the evidence did not show the ship was the AFCO 6 and

failed to link the AFCOG 6 with any other country, thereby rendering the vessel stateless. *See United States v. Knight,* 705 F.2d at 433; *United States v. Cortes,* 588 F.2d 106, 108 (5th Cir.1979) (subject vessel never determined to be registered and "must therefore be treated as a stateless vessel").

AFFIRMED.