

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-29-1994

# United States v. Rosero

Precedential or Non-Precedential:

Docket 93-7600

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"United States v. Rosero" (1994). *1994 Decisions.* Paper 202.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/202

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
‑‑‑‑‑‑‑‑‑‑‑‑‑‑

Nos. 93-7600/7601/7602/7603/7604
‑‑‑‑‑‑‑‑‑‑‑‑‑‑

UNITED STATES OF AMERICA

v.

MARCO ANTONIO COPETE ROSERO,
Appellant in No. 93-7600
(D.C. Crim. No. 93-00068-2)
‑‑‑‑‑‑‑‑‑‑‑‑‑‑

UNITED STATES OF AMERICA

v.

MORENO-MENA, LUIS ALBERTO

CARLOS ALBERTO MORENO-VALENCIA,
a/k/a Luis Alberto Moreno-Mena,
Appellant in No. 93-7601
(D.C. Crim. No. 93-00068-3)
‑‑‑‑‑‑‑‑‑‑‑‑‑‑

UNITED STATES OF AMERICA

v.

JORGE ANTONIO TOVAR,
Appellant in No. 93-7602
(D.C. Crim. No. 93-00068-4)
‑‑‑‑‑‑‑‑‑‑‑‑‑‑

UNITED STATES OF AMERICA

v.

GABRIEL DE JESUS PINEDA,
a/k/a Richardo Corrales Ramirez,
Appellant in No. 93-7603
(D.C. Crim. No. 93-00068-5
‑‑‑‑‑‑‑‑‑‑‑‑‑‑

UNITED STATES OF AMERICA

v.

SIMON DE JESUS MOUSSA-AVILA,
Appellant in No. 93-7604
(D.C. Crim. No. 93-00068-6)

_____

ON APPEAL FROM THE DISTRICT COURT
OF THE VIRGIN ISLANDS

_____

Argued:  April 22, 1994
Before:  STAPLETON, ALITO, and WEIS, Circuit Judges

(Opinion Filed: November 29, 1994)

_____

YVETTE D. ROSS, ESQ. (Argued)
GEORGE W. CANNON, JR., ESQ.
47-A Marshill, Frederiksted
P. O. Box 1548, Frederiksted
St. Croix,
U.S. Virgin Islands 00841-1548

Attorney for Appellant,
Marco Antonio Copete Rosero

THURSTON T. MC KELVIN
Federal Public Defender
PATRICIA SCHRADER-COOKE (Argued)
Assistant Federal Public Defender
P. O. Box 3450
Christiansted, VI  00822

Attorneys for Appellant,
Carlos Alberto Moreno-Valencia

MICHAEL J. SANFORD, ESQ. (Argued)
COON, SANFORD & AMERLING
Chandler's Wharf, Suite 202
Gallows Bay, Christiansted
St. Croix
U.S. Virgin Islands  00824

Attorneys for Appellant,
Jorge Antonio Tovar

BERNADETTE PATRICIA WELCOME, ESQ.
      (Argued)
DOUGLAS L. CAPDEVILLE, ESQ.

P. O. Box 4191
2107 Company Street, Lot 4
Christiansted, St. Croix
U.S. Virgin Islands 00822

Attorneys for Appellant,
Gabriel DeJesus Pineda

SCOTT A. BURTON, ESQ. (Argued)
BURTON & OTTO, P.C.
2118 (53A) Company Street
Christiansted, St. Croix
U.S. Virgin Islands   00820

Attorneys for Appellant,
Simon DeJesus Moussa-Avila

HUGH P. MABE, III
United States Attorney
JAMES M. PETERS (Argued)
Assistant United States Attorney
1108 King Street – Suite 201
Christiansted, St. Croix
U.S. Virgin Islands 00820

-----------------------

OPINION OF THE COURT

-----------------------

ALITO, Circuit Judge:

These are appeals by five defendants who were convicted under 46 U.S.C. App. § 1903(a) for the possession, while on a vessel subject to the jurisdiction of the United States, of a large quantity of marijuana with the intent to distribute it. The government's theory at trial was that the vessel was subject to United States jurisdiction because it was "without nationality" or stateless under 46 U.S.C. App. § 1903(c)(1)(A) and (2). Because the district court gave an erroneous

instruction to the jury on the meaning of this statutory element, we reverse the defendants' convictions and remand for a new trial.

## I.

At approximately 12:30 a.m. on the morning of December 27, 1992, radar on the United States Coast Guard Cutter GALLATIN detected a vessel a short distance south of Saba Island, which is part of the Netherlands Antilles and is located east of St. Croix. An officer on the GALLATIN then sighted this vessel and observed that it had no lights except for a flashing light that it appeared to be using to signal another vessel. The GALLATIN, which was operating without lights for law enforcement purposes, approached to within 400 yards of the other vessel and illuminated its search light. Two vessels, a small open boat and a larger vessel, were then seen heading in opposite directions. The smaller boat headed west toward St. Croix, and the GALLATIN pursued the larger vessel, a 45-foot fishing boat, for about 30 or 40 minutes. During this time, the fishing vessel engaged in various evasive maneuvers and failed to respond to numerous requests to stop that were transmitted in English, Spanish, and French by radio and by means of the GALLATIN's "loudhailer," which can be heard for a quarter of a mile. The fishing vessel also failed to respond to the international signal to stop that was transmitted using the GALLATIN's whistle. During the chase, persons on board the fishing boat were seen throwing something overboard.

When the fishing boat eventually stopped, all of those on board came out of a cabin and sat on a lifeboat on the ship's bow. A boarding party from the GALLATIN then approached the fishing boat. Two nameplates bearing the name TUTO and the number CP-3891A were affixed on either side of the cabin of the fishing vessel by means of wire strung through bolt holes. This vessel, which we will call the TUTO, did not bear the name of any port or country and was not flying any flag. After the vessel was later seized and taken to St. Croix, the flags of three nations, Colombia, Honduras, and Brazil, were discovered on board.

When the boarding party neared the TUTO, an officer from the GALLATIN asked who was in charge, but the TUTO crew members did not respond. The officer asked for permission to board, and the TUTO crew members motioned for the GALLATIN party to come on board. Members of the boarding party detected a strong smell of marijuana, and they observed numerous large bales on the TUTO's deck.

Through an interpreter, an officer from the GALLATIN asked if the master of the TUTO was on board, and the six members of the TUTO's crew responded in unison that he had departed in the smaller vessel. The officer then asked the TUTO crew members the nationality of their ship, and they answered, again in unison, that they and their ship were Colombian. When the officer asked if their vessel had any documentation, one of the crew members answered, and the officer was directed to the cabin, where Colombian registration papers for a vessel named the EDGAR

were found.  These papers bore a registration number, CP-3-189-A, that was similar to but different from that on the TUTO'S nameplates, and the papers contained an expiration date of September 2, 1990.

Based on what he had seen, the officer in charge of the GALLATIN boarding party concluded that the TUTO was a stateless vessel, but because the crew had said that the vessel was Colombian, a decision was made to seek a "statement of no objection" or "SNO" from the Colombian government.  Therefore, at about 10 a.m., the GALLATIN party returned to their ship to await the SNO.  A short time later, the GALLATIN was told that an SNO had been received.  According to the declaration of a State Department official, officials of the Colombian government, "after being advised of a claim of Colombian registry for M/V TOTU (sic)," had stated that they could not confirm that the vessel was registered under the laws of Colombia and "agreed that the M/V TUTO was a stateless vessel."  At about 11:15 a.m., the GALLATIN party again boarded the TUTO, arrested the crew, and seized the vessel and its cargo of 200 bales of marijuana.

The six TUTO crew members were subsequently taken to St. Croix and were indicted for one count of possession, while on a vessel subject to the jurisdiction of the United States, of approximately 10,000 pounds of marijuana with the intent to distribute it, in violation 46 U.S.C. App. § 1903(a).  In addition to filing other pretrial motions, the defendants moved for dismissal of the indictment on the ground that the TUTO was not stateless.  A magistrate judge recommended that the question

of the TUTO'S status as a stateless vessel not be decided before trial but that the defendants be given the opportunity to move for judgments of acquittal on this basis at the close of the prosecution's case. The district court took this approach.

One of the defendants pled guilty, but the other five went to trial before a jury.[1] The court rejected the defendants' argument that the indictment should be dismissed because the TUTO was not stateless. The court stated that "the Prosecution had presented sufficient evidence that the seized vessel was stateless under 46 U.S.C. App. § 1903 to allow the question of statelessness to be submitted to the jury." This question was submitted to the jury pursuant to jury instructions that we will discuss below, and the jury found all five of the defendants guilty. They were sentenced to lengthy terms of imprisonment, and these appeals followed.

II.

A. The chief question presented in these appeals concerns the meaning of the term vessel "without nationality" under 46 U.S.C. App. § 1903. The provision under which the defendants were convicted, 46 U.S.C. App. § 1903(a), applies to,

---

[1]. The District Court of the Virgin Islands had jurisdiction under 18 U.S.C. § 3241, which gives that court concurrent jurisdiction with the federal district courts over "offenses against the laws of the United States committed upon the high seas." While the TUTO may not have been on "the high seas" when it was stopped near Saba, there was ample evidence, including the statement of the crew members that the ship had departed from Barranquilla, Colombia, to show that a violation of 18 U.S.C. App. § 1903(a) had occurred on "the high seas."

among others, any person "on board a vessel subject to the jurisdiction of the United States."  The term "vessel subject to the jurisdiction of the United States" is defined in 46 U.S.C. App. § 1903(c)(1)(A)[2] as including "a vessel without

_____

[2].  This provision states in full:

>    For purposes of this section, a "vessel subject to the jurisdiction of the United States" includes –
>
>        (A)  a vessel without nationality;
>
>        (B)  a vessel assimilated to a vessel without nationality in accordance with paragraph (2) of article 6 of the 1958 Convention on the High Seas;
>
>        (C)  a vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of United States law by the United States;
>
>        (D) a vessel located within the customs waters of the United States; and
>
>        (E)  a vessel located in the territorial waters of another nation, where the nation consents to the enforcement of United States law by the United States.
>
>    Consent or waiver of objection by a foreign nation to the enforcement of United States law by the United States under subparagraph (C) or (E) of this paragraph may be obtained by radio, telephone, or similar oral or electronic means, and may be proved by certification of the Secretary of State or the Secretary's designee.

46 U.S.C. App. § 1903(c)(1).

    Article 6, paragraph (2) of the 1958 Convention on the High Seas, to which reference is made in 46 U.S.C. App. § 1903(c)(1)(B), provides:

nationality,"[3] and the latter term is defined in 46 U.S.C. App. §

1903(c)(2) as follows:

> For purposes of this section, a "vessel
> without nationality" <u>includes</u>
>
> (A)  a vessel aboard which the master or
> person in charge makes a claim of registry,
> which claim is denied by the flag nation
> whose registry is claimed; and

(..continued)

> A ship which sails under the flags of
> two or more States, using them according to
> convenience, may not claim any of the
> nationalities in question with respect to any
> other State, and may be assimilated to a ship
> without nationality.

Convention on the High Seas of 1959, 13 U.S.T. 2312, T.I.A.S. No. 5200, Art. 6(2).

In this case, the prosecution relied solely on the theory that the TUTO was "without nationality" under 46 U.S.C. App. § 1903(c)(1)(A).

[3].  The First, Fifth, and Eleventh Circuits have held that, when the facts bearing on whether a vessel is "without nationality" are in dispute, this question should be resolved at trial. <u>See</u> <u>United States v. Piedrahita-Santiago</u>, 931 F.2d 127, 129 (1st Cir. 1991); <u>United States v. Potes</u>, 880 F.2d 1475, 1478 n.1 (1st Cir. 1989); <u>United States v. Ayarza-Garcia</u>, 819 F.2d 1043, 1048-49 (11th Cir.), <u>cert. denied</u>, 484 U.S. 969 (1987); <u>United States v. Canales</u>, 744 F.2d 413, 434 (5th Cir. 1984); <u>see also</u> <u>United States v. Nukida</u>, 8 F.3d 665, 670 (9th Cir. 1993).  We agree with these holdings.  <u>See</u> <u>Fogel v. Chestnutt</u>, 668 F.2d 100, 105-07 (2d Cir. 1981), <u>cert. denied</u>, 459 U.S. 828 (1982); footnote 1, <u>supra</u>. Our decision in <u>United States v. Wright-Barker</u>, 784 F.2d 161, 170 (3rd Cir. 1986), does not compel a contrary result because the question at issue was not addressed by the court in that case. <u>Cf.</u> <u>United States v. Martinez-Hidalgo</u>, 993 F.2d 1052, 1057 & n.10 (3rd Cir. 1993)(stating that the disposition in <u>Wright-Barker</u> was inconsistent with the approach taken in <u>Piedrahita-Santiago</u>). "`[Q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be regarded as having been so decided as to constitute precedents.'"  <u>Grant v. Shalala</u>, 989 F.2d 1332, 1341 (3rd Cir. 1993), quoting <u>Webster v. Fall</u>, 266 U.S. 507, 511 (1925).

> (B)  any vessel aboard which the master
> or person in charge fails, upon request of an
> officer of the United States empowered to
> enforce applicable provisions of United
> States law, to make a claim of nationality or
> registry for that vessel.

46 U.S.C. App. § 1903(c)(2) (emphasis added).  The statute then addresses the concept of a "claim of nationality or registry" as follows:

> For purposes of this section, a claim of
> nationality or registry <u>only includes</u>
>
> (A)  possession on board the vessel and
> production of documents evidencing the
> vessel's nationality in accordance with
> article 5 of the 1958 Convention on the High
> Seas;[4]
>
> (B)  flying its flag nation's ensign or
> flag; or
>
> (C)  a verbal claim of nationality or
> registry by the master or person in charge of
> the vessel.

46 U.S.C. App. § 1903(c)(3) (emphasis added).

---

[4].  Article 5(1) reads as follows:

> Each State shall fix the conditions for
> the grant of its nationality to ships, for
> the registration of ships in its territory,
> and for the right to fly its flag.  Ships
> have the nationality of the State whose flag
> they are entitled to fly.  There must exist a
> genuine link between the State and the ship;
> in particular, the State must effectively
> exercise its jurisdiction and control in
> administrative, technical and social matters
> over ships flying its flag.

Convention on the High Seas of 1958, 13 U.S.T. 2312, T.I.A.S. No. 5200, Article 5(1).

In interpreting these provisions, we first note that 46 U.S.C. App. § 1903(c)(2) does not attempt to provide an exhaustive definition of the term "vessel without nationality." Instead, this provision states that this term "includes" vessels that fall within the categories set out in subsections (A) and (B). The word "include" means "to. . . list. . .as a part or component of a whole or of a larger group, class, or aggregate." Webster's Third New International Dictionary 1143 (1971). Thus, if the term "includes" in 46 U.S.C. App. § 1903(c)(2) is interpreted in accordance with ordinary usage, the categories set out in subsections (A) and (B) are merely parts or components of the entire set of vessels without nationality. This interpretation is reinforced by the contrast between the term "includes" in 46 U.S.C. App. § 1903(c)(2) and the phrase "only includes" in 46 U.S.C. App. § 1903(c)(3). This contrast dispels any suggestion that the statutory drafters sloppily used the term "includes" in 46 U.S.C. App. § 1903(c)(2) when they meant to say "only includes." Consequently, it seems clear from the statutory language that the term "vessel without nationality" encompasses, not only those vessels that come within the categories described in subsections (A) and (B), but other vessels as well.

Unfortunately, neither the text of 46 U.S.C. App. § 1903 nor its legislative history[5] makes clear precisely which

---

[5]. See S. Rep. No. 530, 99th Cong., 2d Sess. (1986), reprinted in 1986 U.S.C.C.A.N. 5986; H.R. Rep. No. 547, 99th Cong., 2d Sess. (1986); Drug Interdiction and Military Readiness: Hearings Before the Subcommittee on Coast Guard and Navigation of the House Committee on Merchant Marine and Fisheries, 99th Cong., 1st Sess. (1985).

other vessels Congress had in mind when it employed the term "vessel without nationality."[6]  This concept, however, has a reasonably well developed meaning under international law. "Where Congress uses terms that have accumulated settled meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meanings of these terms."  NLRB v. Amax Coal Co., 453 U.S. 322, 329 (1981).  See also Community of Creative Non-Violence v. Reid, 490 U.S. 730, 739 (1989).  This same principle logically applies when Congress uses a term that has acquired a settled meaning under customary international law. We therefore think that it is reasonable to assume that the residual category of vessels "without nationality" under 46 U.S.C. App. § 1903(c)--i.e., those not within subsections (c)(2)(A) or (B)-- are those that would be regarded as without

---

[6].  Nor have we found guidance in the text or legislative history of a predecessor provision, 21 U.S.C. § 955b(d) (repealed 1986). This provision stated without elaboration:

> "Vessel subject to the jurisdiction of the United States" includes a vessel without nationality or a vessel assimilated to a vessel without nationality, in accordance with paragraph (2) of article 6 of the Convention of the High Seas, 1958.

See also S. Rep. No. 855, 96th Cong., 2d Sess. (1980), reprinted in 1980 U.S.C.C.A.N. 2785; H.R. Rep. No. 323, 96th Cong., 2d Sess. (1980); A Bill to Facilitate Increased Enforcement by the Coast Guard of Laws Relating to the Importation of Controlled Substances: Hearings Before the Subcommittee on Coast Guard and Navigation of the House Committee on Merchant Marine and Fisheries, 96th Cong., 1st Sess (1979); 125 Cong. Rec. 20082.

nationality or stateless under international law.[7]  We therefore turn to the meaning of a vessel that is "without nationality" or stateless under international law.

B. Under international law, "[s]hips have the nationality of the State whose flag they are entitled to fly." Convention on the High Seas of 1958, 13 U.S.T. 2312, T.I.A.S. No. 5200, art. 5(l).  See also, e.g., Restatement (Third) of the Foreign Relations Law of the United States § 501 ("A ship has the nationality of the state that registered it and authorized it to fly the ship's flag. . . .").  Therefore, a vessel is without nationality if it is not authorized to fly the flag of any state. See H. Meyers, The Nationality of Ships 309 (1967).  This situation may arise if no state has ever authorized a particular ship to fly its flag, if a state has canceled its authorization, or if the political entity that authorized a ship to fly its flag is not recognized as an international person.  See id. at 309–323; 1 L. Oppenheim, International Law § 260 (8th ed. 1955) There may be other situations in which ships would be regarded as without nationality under international law, but we will not attempt to provide a comprehensive catalog here.  For present purposes, it is enough to note that, under international law, the core of the concept of a vessel that is "without nationality" or stateless is that the vessel lacks authorization to fly the flag of any recognized state.  Thus, any vessel that falls within this

---

[7].  See also H.R. Rep. No. 323, supra, at 22 ("The terms of art used in the proposed [1980] amendment are defined so as to comport with international law. . . .").

category is "without nationality" under 46 U.S.C. App. §
1903(c)(2), whether or not that vessel also satisfies subsections
(A) or (B) of that provision.

These subsections add to the concept of a "stateless"
vessel under international law and appear to be designed to make
it practicable for Coast Guard ships to ascertain whether a
suspicious vessel encountered at sea is stateless.  Without
subsections (A) and (B), establishing that a vessel is without
nationality -- i.e., that no state authorizes it to fly its flag
-- would present the difficulties often associated with proving a
negative.

Subsections (A) and (B) attempt to alleviate these
difficulties by placing upon the master or person in charge of
the vessel in question the burden of making a claim of
nationality or registry.  If the master or person in charge makes
a false claim of nationality or registry (46 U.S.C. App. §
1903(c)(2)(A)), or if, upon request,  the master or person in
charge, fails to make any claim, the ship is deemed to be
stateless.  46 U.S.C. § 1903(c)(2)(B).

In summary, then, we interpret 46 U.S.C. App. §
1903(c)(2) to mean that a vessel is "without nationality" if (a)
the vessel is "stateless" under international law, which
generally will mean that the vessel is not authorized by any
state to fly its flag or (b) that the vessel falls within
subsections (A) or (B).  With this understanding of 46 U.S.C.
App. § 1903(c)(2) in mind, we now consider the jury instructions
given in this case.

C.  The district court properly instructed the jury that the prosecution could establish that the TUTO was a vessel "without nationality" by showing that the requirements of 46 U.S.C. App. § 1903(c)(2)(A) or (B) had been met.  However, at the urging of the prosecution, the court then added:

> You may also consider the totality of the evidence in determining whether a vessel is stateless or without nationality.  You may consider but you are not limited in considering whether the vessel was flying a flag, whether it had its home port shown on the hull,  whether it was or had been validly registered under the law of any nation, whether it displayed a registration number identified with a specific country, whether there was a fake claim of country or registry.  You may consider all of these factors but you are not limited.

App. C-381A.

The apparent purpose of this instruction was to explain to the jury how a vessel might qualify as one "without nationality" even if it did not fall within 46 U.S.C. App. § 1903(c)(2)(A) or (B).  As we have attempted to show, a vessel can so qualify if it is stateless under international law.  The instruction given by the district court, however, did not correspond with the meaning of a stateless vessel under international law.  Instead it implied --incorrectly -- that the jury could find that the TUTO was stateless based on an unstructured weighing of the totality of the evidence, including the factors that the court specifically mentioned.[8]  We are not

---

[8].  This implication appears to be precisely what the government intended.  See, e.g., A-142A (Gov't. district court brief arguing that the determination of statelessness "must be based on the

aware of any support for such a rule in either international law or the law of this country.

In its brief on appeal,[9] its district court briefs,[10] and its jury instruction requests,[11] the government relied on a list of court of appeals decisions as authority for the proposition that a "totality of the evidence" test was proper.[12]

(..continued)
totality of the circumstances"); Gov't's Requested Jury Instruction No. 4.  And the district court agreed with the government's position.  See C-176A to C-183A; C-236A to-C237A.

[9].  See Gov't Br. at 12-13.

[10].  See, e.g., A-142A; Gov't's Response to Defendant Pineda's Motion to Suppress at 5-6.

[11].  See Gov't's Requested Jury Instruction No 4.

[12].  The government relied on the following cases:  United States v. Cuevas-Esquivel, 905 F.2d 510, 513 (1st Cir.) (vessel stateless because master or person in charge, on request, did not make claim of nationality or registry that satisfied 46 U.S.C. App. § 1903(c)(2)); cert. denied, 498 U.S. 969 (1987); United States v. Fuentes, 877 F.2d 898 (11th Cir. 1989); United States v. Victoria, 876 F.2d 1009 (1st Cir. 1989) (vessel stateless under 46 U.S.C. App. § 1903(c)(2)(B) because it failed on request to make a claim of nationality or registry); United States v. Ayarza-Garcia, 819 F.2d 1043 (11th Cir. 1987) (ship assimilated to one without nationality because conflicting claims of nationality made), cert. denied, 484 U.S. 969 (1987); United States v. Gonzalez, 810 F.2d 1538, 1541-42 (11th Cir. 1987) (vessel stateless, apparently because it sailed under authority of two nations and made false claim of nationality); United States v. Matute, 767 F.2d 1511, 1512-13 (11th Cir. 1985) (ship assimilated to one without nationality because sailing under hybrid Colombian/Venezuelan flag); United States v. Marquez, 759 F.2d 864, 867 (11th Cir. 1985) (vessel stateless on ground not registered anywhere); United States v. Martinez, 700 F.2d 1358, 1367 (11th Cir. 1983) (ship assimilated to one without nationality because conflicting claims of nationality made); United States v. Marino-Garcia, 679 F.2d 1373, 1378 n.3 (11th Cir. 1982) (vessel stateless based on false assertion of nationality and conflicting indicia of nationality), cert. denied, 459 U.S. 1114 (1983).

We have studied these cases, and we do not believe that they support the government's position. While it is certainly true that most of these decisions, in considering whether a particular vessel had been shown to be stateless, rely on one or more of the factors enumerated in the jury instruction at issue, none of the decisions employs a test resembling that advocated by the government and accepted by the district court. Instead, most of these decisions rely on one or more of the enumerated factors in determining whether the requirements of 46 U.S.C. App. § 1903(c)(2)(A) or (B) (or a related statutory provision) had been met. While we will not discuss all of the cases cited by the government, we will discuss one representative case to illustrate the error in the government's reading of these precedents.

The first factor listed in the jury instruction at issue was "whether the vessel was flying a flag." In its appellate brief, the government defends this portion of the instruction by citing, among other cases, United States v. Fuentes, 877 F.2d 895, 900 (11th Cir.), cert. denied, 493 U.S. 943 (1989). There, the court held that a ship was without nationality under 46 U.S.C. App. § 1903(c)(2)(B) because the master or person in charge failed, upon request, to make a claim of nationality or registry within the meaning of 46 U.S.C. App. § 1903(c)(3). Under this latter provision, one means of making a claim of nationality or registry is by "flying [the] flag nation's ensign or flag" (46 U.S.C. App. § 1903(c)(3)(B)), and it was in this context that the Fuentes court relied on the fact that the ship in that case flew no flag. See Fuentes, 877 F.2d

at 900.  Thus, Fuentes does not stand for the proposition that a ship may be found to be stateless based on an unstructured weighing of the totality of the evidence.  And the same is true of the other cases on which the government relies.

D.  While we are convinced that the jury instruction discussed above was incorrect, it is a closer question whether the defendants preserved valid objections to it.  Rule 30 of the Federal Rules of Criminal Procedure states that "[n]o party may assign as error any portion of [a jury] charge . . . unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection."  Here, there is no question that the defendants objected, but we must also consider the adequacy of their explanations of the grounds for their objections.  In this regard, we have explained:

> The specificity requirement [of Rule 30] imposes a strict standard on defense counsel, but it is not a mere formalism.  United States v. Castro, 776 F.2d 1118, 1128-29 (3d Cir. 1985), cert. denied, 475 U.S. 1029, 106 S. Ct. 1233, 89 L.Ed.2d 342 (1986).  Without a clearly articulated objection, a trial judge is not apprised sufficiently of the contested issue and the need to cure a potential error to avoid a new trial.  Id. at 1129 (citing United States v. Graham, 758 F.2d 879, 883 (3d Cir.), cert. denied, 474 U.S. 901, 106 S. Ct. 226, 88 L.Ed.2d 226 (1985)).

Government of Virgin Islands v. Knight, 989 F.2d 619, 631 (3d Cir.), cert. denied, 114 S. Ct. 556 (1993).

Whether the defendants complied with Rule 30 in this case is not entirely free from doubt.  Just as the government's interpretation of the term "vessel without nationality" was incorrect, the clearest alternative interpretation advanced by the defendants was also erroneous.  Under this interpretation, which was embodied in the instructions requested by one of the defendants, a vessel could be found to be "without nationality" only if the requirements of 46 U.S.C. App. § 1903(c)(2)(A) or (B) were met.[13]  As we have explained, however, this interpretation is plainly inconsistent with the statutory language.  Moreover, it is not clear that any of the defense attorneys ever provided the district court with a complete and correct interpretation of the term "vessel without nationality."

Nevertheless, defense counsel, in objecting to the court's charge, did provide a clear and accurate explanation as to why that charge was not supported by the authorities upon which the government relied.  To take one example, counsel for defendant Tovar stated that he had read the cases cited by the government and had found that the factors enumerated in the court's charge had been "mentioned" in those cases merely as "ancillary facts" and not as "the reason for the determination " or the "deciding factor."  C-180A.  See also, e.g., C-234A to C-236A.  Other defense attorneys made similar arguments (see id. at C-179A), and it appears that defense counsel were generally deemed by the district court as having joined in each other's

---

[13].  See Defendant Tovar's Proposed Jury Instruction No. 1.

arguments.  We also note that the government has not argued on appeal that we should review the portion of the instruction at issue under a plain error standard.[14]  For these reasons, we hold that the defendants preserved valid objections to the erroneous portion of the instructions.  That error was not harmless since it concerned the meaning of one of the elements of the offense and, as discussed below (see page 21, infra), the evidence relating to this element was close.  The defendants' convictions must therefore be reversed.

E.  The defendants contend, however, that we must go further and order the entry of judgments of acquittal because the government's evidence was insufficient to establish that the TUTO was stateless.  We hold, however, that prosecution's evidence was sufficient to create a jury question under either 46 U.S.C. App. § 1903(c)(2)(A) or (B).

As previously noted, under subsection (A), the prosecution can establish that a vessel is stateless by showing that the master or person in charge made a claim of nationality or registry that was denied by the flag nation whose registry was claimed.  Here, the crew of the boat that we have been referring to as the TUTO told the GALLATIN boarding party that their vessel was Colombian, and that vessel bore the name TUTO and a registration number.  The Colombian government could not confirm that the TUTO was registered under the laws of Colombia.  Based on these facts, a rational jury could conclude (a) that one or

---

[14].  See Gov't Br. at 3, 26-27.

more of the crew members were "in charge" of the boat and (b) that their oral statement, coupled with the markings on their boat, constituted a claim that the boat was registered in Colombia under the name and number that it bore,[15] and that the Colombian government denied that claim. While a rational jury could interpret this evidence differently, we believe that the proof was sufficient to satisfy subsection (A).

Similarly, we hold that the evidence was sufficient to satisfy subsection (B). Under this provision, as noted, if the master or person in charge fails, upon request, to make any claim of nationality or registry, the vessel may be regarded as stateless. By clear implication, we believe, this provision applies when the master of a ship flees and leaves no one in charge, and in this case, a rational jury could certainly find that that is exactly what occurred. Accordingly, we hold that the evidence was sufficient to prove that the TUTO was stateless, and the defendants are not entitled to judgments of acquittal.[16]

_____

[15]. The markings on a vessel cannot constitute a claim of nationality or registry. See 46 U.S.C. App. § 1903(c)(3). However, when a claim of nationality or registry is made without providing either the name or registration number of the vessel -- for instance, by making an oral claim of nationality without providing any further information (see 46 U.S.C. App. § 1903(c)(3)(C)) or by simply flying a flag (see 46 U.S.C. App. § 1903(c)(3)(B)) -- it stands to reason that the United States officials who wish to verify the claim may rely on the ship's markings in order to carry out that procedure. Otherwise, the apparent purposes of subsections (A) and (B) would be undermined.

[16]. The defendants also argue that they are entitled to dismissal of the indictment because the term "vessel" in 46 U.S.C. App. § 1903(c)(2) is unconstitutionally vague, but we see no merit in this argument.

III.


For the reasons explained above, the judgments entered by the district court are reversed, and this case is remanded for a new trial or other proceedings consistent with this opinion.

(..continued)
In addition, the defendants maintain that the district court committed trial errors besides the one discussed in the text of this opinion, but we reject these arguments. The defendants' contention that the prosecution was required to prove a "nexus" between the offense with which they were charged and the United States is foreclosed by our decision in United States v. Martinez-Hidalgo, 943 F.2d 1052, 1056 (3d Cir. 1993), which we do not believe is materially distinguishable. The defendants' argument that the Coast Guard was obligated to obtain the consent of the government of the Netherlands Antilles before stopping, boarding, or seizing the TUTO within the territorial waters of that country is inconsistent with 46 U.S.C. App. § 1903(b), which provides that "[a] failure to comply with international law in the enforcement of this chapter may be invoked solely by a foreign nation, and a failure to comply with international law shall not divest a court of jurisdiction or otherwise constitute a defense to any proceeding under this chapter." See also S. Rep. No. 530, 99th Cong., 2d Sess.11 (1986), reprinted in 1986 U.S.C.C.A.N. 5986, 6001. We do not agree with the defendants that the district court abused its discretion under Fed. R. Evid. 403 in refusing to exclude certain evidence, and we find no error in the district court's use of the term "unhesitatingly" in its instruction on reasonable doubt. See Victor v. Nebraska, 114 S. Ct. 1239, 1290 (1994); United States v. DeLazo, 497 F.2d 1168, 1171 n.5 (3d Cir. 1974).