**UNITED STATES of America, Plaintiff,**

v.

**Alejandro ACOSTA VALDEZ, Luis Cava Pichardo, and Meraldo Polanco, Defendants.**

**No. CRIM. 98–105(PG).**

United States District Court, D. Puerto Rico.

Aug. 26, 1999.

Jorge E. Vega–Pacheco, Antonio R. Bazán, San Juan, PR, for Plaintiff.

Rafael F. Castro–Lang, Irma R. Valdejulli–Pérez, Fernando J. Carlo–Gorbea, Joseph C. Laws, Federal Public Defender, Marlene Aponte–Cabrera, Siena Morena, Las Cumbres, San Juan, PR, for Defendants.

## OPINION & ORDER

PEREZ–GIMENEZ, District Judge.

Today the Court revisits for the third time defendants' motion to suppress the evidence seized at their yawl on May 4, 1998. At issue is whether the Customs officers' failed to comply with the Maritime Drug Law Enforcement Act (hereinafter referred to as "MDLEA"), 46 U.S.C.App. § 1903. As stated in this Court's opinion and order of May 20, 1999, since defendants' vessel was not a "vessel of the United States" as defined in 46 U.S.C.App. § 1903(b), and defendants themselves were neither citizens nor resident aliens of the United States at the time of the Customs officers' intervention, only one possibility remains open for the evidence not to be suppressed, namely that defendants' vessel was "subject to the jurisdiction of the United States." Of the five possible types of vessels specified in 46 U.S.C.App. § 1903(c)(1) that are "subject to the jurisdiction of the United States," only one could arguably be applicable to the facts at hand: "a vessel without nationality."

*46 U.S.C.App. § 1903(c)(2)*

[A] "vessel without nationality" includes—

(A) a vessel aboard which the master or person in charge makes a claim of

registry, which claim is denied by the flag nation whose registry is claimed;

(B) any vessel aboard which the master or person in charge fails, upon request of an officer of the United States empowered to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and

(C) a vessel aboard which the master or person in charge makes a claim of registry and the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

*46 U.S.C.App. § 1903(c)(3)*

For purposes of this section, a claim of nationality or registry only includes:

(A) possession on board the vessel and production of documents evidencing the vessel's nationality in accordance with article 5 of the 1958 Convention on the High Seas;

(B) flying its flag nation's ensign or flag; or

(C) a verbal claim of nationality or registry by the master or person in charge of the vessel.

Due to the fact that the master or person in charge of defendants' vessel did not make a claim of nationality at the time that the Customs officers boarded the yawl, subsections (A) and (C) of 46 U.S.C.App. § 1903(c)(2) are inapplicable to the circumstances before us. Subsection (B) of 46 U.S.C.App. § 1903(c)(2) is also unavailable to justify the method employed by the Customs officers because they did not make a request of nationality before boarding the yawl or seizing the drugs.

The United States argues that the master of the yawl untimely made a claim of registry ten months after the suppression hearing held before this Court as evidence that at the time of the seizure, the yawl qualified as a vessel without nationality. (Dkt. # 57 at 6). All this evidence suggests, however, that § 1903(c)(2)(A) and (C) do not apply to the facts at hand.

That the Ports Authority of the Netherlands Antilles is unable to assert affirmatively and unequivocally that such vessel is registered does not cure Customs' failure to request a claim of nationality or registry before boarding the yawl. Hence, § 1903(c)(2)(B) has not been satisfied either and the requirements outlined to classify defendants' vessel as one "without nationality" appear, at a first glance, not to have been fulfilled.

It is the Government's contention, though, that the use of the word "includes" in § 1903(c)(2) is not meant to be exhaustive, but merely illustrative. Said view is reinforced by the fact that § 1903(c)(3), which is exhaustive in its listing of what constitutes a claim of nationality or registry, uses the words "only includes" rather than simply "includes." Therefore, since the word "includes" could be defined as "to have as part of a whole," *Webster's New Twentieth Century Unabridged Dictionary,* 2nd ed.(1983), it is viable to assume that "vessels without nationality" that are not listed in § 1903(c)(2) are those that are determined to be so by international law. *See* Senate Rep. 96–855, 96th Cong., 2nd Sess., July 16, 1980, P.L. 96–350 (stating prior to the enactment of § 1903(c)(2)'s predecessor 21 U.S.C. § 955(c) that "[t]hese provisions would give the Justice Department the maximum prosecutorial authority permitted under international law").

 In support of its argument, the Government cites *United States v. Molinares Charris,* 822 F.2d 1213, 1217 (1st Cir.1987) and *United States v. Rosero,* 42 F.3d 166, 170 (3rd Cir.1994) both of which incorporate international law into the analysis of what is a "vessel without nationality." Although these cases deal with Coast Guard interventions, not actions undertaken by Customs, and with facts not precisely analogous to those presently at bar, the Court finds persuasive the use of interna-

tional law as part of the scenarios that § 1903(c)(2) intends to embrace.[1]

Under international law, "[s]hips have the nationality of the State whose flag they are entitled to fly." Convention on the High Seas of 1958, 13 U.S.T. 2312, T.I.A.S. No. 5200, art. 5(1). *See also, e.g., Restatement (Third) of the Foreign Relations Law of the United States* § 501 ("A ship has the nationality of the state that registered it and authorized it to fly the ship's flag....")). Therefore, a vessel is without nationality if it is not authorized to fly the flag of any state. *See H. Meyers, The Nationality of Ships* 309 (1967). This situation may arise if no state has ever authorized a particular ship to fly its flag, if a state has canceled its authorization, or if the political entity that authorized a ship to fly its flag is not recognized as an international person. *See id.* at 309–323; 1 L. Oppenheim, International Law § 260 (8th ed.1955). *United States v. Rosero,* 42 F.3d at 171.

It is clear that the Netherlands Antilles have been unable to trace registry of the yawl seized on May 4, 1998. *See* May 18, 1999 Letter of St. Maarten Ports Authority, signed by Managing Director H. Sonny Hoo. The vessel in which defendants traveled was not authorized to fly the flag of the Netherlands Antilles, thus making it—pursuant to international law—a "vessel without nationality."

The prosecution further argues that although defendants certainly have standing to "challenge the jurisdiction of the United States on the grounds that it violated its own statute," *United States v. Maynard,* 888 F.2d 918, 927 (1st Cir.1989) (yet another Coast Guard case), only a foreign nation like the Netherlands Antilles would have standing to sue the United States for a violation of international law. 46 U.S.C.App. § 1903(d). Therefore, the argument runs, since this Court is basing its decision on international law, defendants lack standing to challenge a violation of international law. However, this Court cements its holding not on international law per se, but upon § 1903(c)(2) as it incorporates international law in its non-exhaustive list of what constitutes a stateless vessel. By means of said inclusion, defendants do have standing to challenge the jurisdiction.

Wherefore, due to the status of defendants' yawl as a "vessel without nationality" at the time it was seized in compliance with 46 U.S.C.App. § 1903 by those agents who boarded said vessel, the Court hereby **GRANTS** the government's motion for reconsideration and reinstates its original order denying defendants' motion to suppress the evidence seized by the United States Customs officials.

**IT IS SO ORDERED.**

---

1. It is troubling that the Government seems to ignore the difference between Customs and the Coast Guard with regard to their authority to board vessels in the high seas. With the exception of *United States v. Gonzalez,* 688 F.Supp. 658, 663 (D.D.C.1988), the prosecution thrusts its arguments based upon cases in which the Coast Guard, not Customs, intervened, such as *United States v. Postal,* 589 F.2d 862, 873 (5th Cir.1979) and *United States v. Cadena,* 585 F.2d 1252 (5th Cir. 1978), *overruled on other grounds by United States v. Michelena–Orovio,* 719 F.2d 738 (5th Cir.1983). In the case at bar, Customs, not the Coast Guard, boarded defendants' yawl.