# United States Court of Appeals
## For the First Circuit

No. 01-2247

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ GONZÁLEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Howard, Circuit Judges.

Raymond L. Sánchez-Maceira for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, with whom
Guillermo Gil, former United States Attorney, and Jorge E. Vega-Pacheco, Assistant United States Attorney, were on brief for
appellee.

November 22, 2002

**BOUDIN**, <u>Chief Judge</u>.  On this appeal, we face a narrow set of issues arising from a recent amendment of the Maritime Drug Law Enforcement Act ("Maritime Act"), 46 U.S.C. app. §§ 1901 <u>et seq.</u> (2000), intended by Congress to facilitate the prosecution of high-seas drug smuggling on U.S. or stateless vessels.  In a nutshell, the issue is whether, by pleading guilty unconditionally to a drug trafficking charge (possession of drugs on a stateless vessel with intent to distribute) the defendant Jose Alberto Gonzalez forfeited any claim that the boat in question was a foreign (rather than a stateless) vessel.

The pertinent facts, derived from the plea agreement, can be stated briefly.  On April 27, 1999, Gonzalez and another individual were rescued from a speed boat that was two-thirds submerged on the high seas off the coast of the British Virgin Islands.  Summoned by the rescuing vessel, the U.S. Coast Guard responded and on inspection found that the speed boat carried numerous bales of cocaine.  Defendant and his companion were indicted for possessing the cocaine, with intent to distribute it, aboard "a vessel without nationality" in violation of 46 U.S.C. app. § 1903(a).

That statute makes possession of cocaine with intent to distribute a federal crime where possession occurs either on board a "vessel of the United States" or on board a "vessel subject to jurisdiction of the United States"; <u>id.</u> § 1903(a); and the statute

-2-

places "a vessel without nationality" (sometimes called a stateless vessel) in the latter category. Id. § 1903(c)(1)(A). "Vessel without nationality" is further defined to include:

> (A) a vessel aboard which the master or person in charge makes a claim of registry, which claim is denied by the flag nation whose registry is claimed;
>
> (B) any vessel aboard which the master or person in charge fails, upon request of an officer of the United States empowered to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and
>
> (C) a vessel aboard which the master or person in charge makes a claim of registry and the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

Id. § 1903(c)(2)(A)-(C).

Gonzalez moved to dismiss the indictment on the ground that the speed boat was not a "vessel without nationality" because, inter alia, no claim of registry was requested by an officer of the United States. The United States resisted the motion on various grounds directed to showing that the speed boat was a stateless vessel. In due course, a magistrate judge recommended denial of the motion and the district court agreed. Suffice it to say that the issue is complicated.

Faced with an adverse ruling by the district court, Gonzalez negotiated a guilty plea. On February 23, 2001, a plea agreement was filed, with an agreed-upon sentence of 72 months, in which Gonzalez admitted the offense with which he was charged. In a change of plea proceeding, Gonzalez then expressly pled to the

offense of possessing cocaine on board a vessel subject to the jurisdiction of the United States with intent to distribute. Thereafter, Gonzalez was sentenced to 72 months. No issues were reserved for appeal. Nevertheless, after sentencing, Gonzalez did file an appeal asserting that the vessel was not in fact a stateless vessel.

Ordinarily a guilty plea, entered unconditionally--that is, without reserving an issue or issues for appeal--establishes guilt and forfeits all objections and defenses. United States v. Cordero, 42 F.3d 697, 699 (1st Cir. 1994). There are a few exceptions to this principle. One applies where the claim on appeal is that the district court lacked subject matter jurisdiction over the case, that is to say, where the defendant says that the subject matter of the case falls outside the category of cases that the court is authorized to try. E.g., Cordero, 42 F.3d at 99; United States v. Doyle, 348 F.2d 715, 718-19 (2d Cir. 1965) (Friendly, J.).

One may ask why this exception exists when so many other objections and defenses in criminal cases, including constitutional issues and prior professions of innocence, are readily forfeited through a knowing and voluntary plea of guilty. The answer is that courts treat their responsibility to stay within their grant of authority as a matter of extreme importance. United States Catholic Conf. v. Abortion Rights Mobilization, Inc., 487 U.S. 72,

77 (1988). In fact, a court is expected to raise the subject-matter jurisdiction objection on its own motion at any stage and even if no party objects. Fed R. Crim. P. 12(b)(2); Fed. R. Civ. P.12(h)(3).

Article III gives to the federal judicial branch authority--that is, subject matter jurisdiction--over all cases arising under the laws of the United States; and by statute Congress has given the federal district courts this authority over federal criminal cases in the first instance. 18 U.S.C. § 3231 (2000). Conventionally, a federal criminal case is within the subject matter jurisdiction of the district court if the indictment charges, as the Gonzalez indictment certainly did, that the defendant committed a crime described in Title 18 or in one of the other statutes defining federal crimes. See 13B Wright & Miller, Federal Practice and Procedure § 3575, at 244-45 (2d ed. 1984). In such a case subject matter jurisdiction, that is to say, authority to decide all other issues presented within the framework of the case, exists.

Thus, unless Congress provided otherwise, subject matter jurisdiction existed in the present case because Gonzalez was charged in district court under section 1903, which is a federal criminal statute. By the same token, the stateless vessel issue was forfeited by an unconditional guilty plea--again, unless Congress provided otherwise. This was certainly this court's view prior to

the amendment of the statute.[1] And if a defendant did seek to preserve an issue, he might easily find the prosecutor refusing to bargain.

In 1996, Congress amended the Maritime Act. It did so among other things by expanding the definition of what constitutes a stateless vessel, 46 U.S.C. app. § 1903(c)(2)(C), and also by adding a provision reading in pertinent part as follows:

> Jurisdiction of the United States with respect to vessels subject to this chapter is not an element of any offense. All jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge.

46 U.S.C. app. § 1903(f). The key question is whether this terse provision converted the stateless vessel issue into one implicating the subject matter jurisdiction of the district court and prevented it from being forfeited in connection with a plea of guilty.

Nothing in the wording of the statute suggests such an intention. The term "jurisdiction" is notoriously malleable and is used in a variety of contexts (e.g., personal jurisdiction) that have nothing whatever to do with the court's subject matter

---

[1]<u>Valencia</u> v. <u>United States</u>, 923 F.2d 917, 921 (1st Cir. 1991). <u>But see</u> <u>United States</u> v. <u>Pinto-Mejia</u>, 720 F.2d 248, 256-261 (2d Cir. 1983). In accord with <u>Valencia</u> are numerous other cases holding that threshold or nexus elements may be forfeited through a guilty plea. <u>See</u> <u>Hugi</u> v. <u>United States</u>, 164 F.3d 378, 380-381 (7th Cir. 1999) (interstate commerce requirement); <u>Mack</u> v. <u>United States</u>, 853 F.2d 585, 586 (8th Cir. 1988) (bank federally insured).

jurisdiction. <u>See</u> <u>Hugi</u>, 164 F.3d at 380-81. In very general terms, "jurisdiction" means something akin to "authority over." <u>Black's</u> <u>Law Dictionary</u> 855 (7th ed. 1999). Here, the word evidently refers to the substantive reach of the <u>statute</u>--applying to some vessels but not others--and not to the subject matter jurisdiction of the court.

In other words, Congress asserted its own authority to regulate drug trafficking on some ships but not all ships and, in this context, used the word "jurisdiction" loosely to describe its own assertion of authority to regulate; it does the same thing whenever it fixes an "affects interstate commerce" or "involved a federally insured bank" as a condition of the crime. <u>See</u> note 1 above. But such conditions have nothing whatever to do with the subject matter of the federal district court; they are routine questions as to the reach and application of a criminal statute.

Nor does legislative history suggest that Congress had in mind the court's subject matter jurisdiction or that it meant to prevent a guilty plea from being given its normal effect. The legislative history does not refer to subject matter jurisdiction or reveal any purpose to limit guilty pleas. On the contrary, the general purpose of the amendments was to facilitate prosecutions or, as the President's signing statement put it, to "strengthen[] the

hand of prosecutors in drug smuggling cases." 32 Weekly Comp. Pres. Doc. 2212 (Oct. 28, 1996).[2]

One way in which the statute did this was to remove from the jury and confide to the judge an issue that had nothing to do with whether the defendant did possess drugs with an intent to distribute. To make the vessel's status an issue that could never be the subject of an effective and binding guilty plea would greatly complicate proceedings rather than facilitate the enforcement of the drug laws. It would mean in practical terms that the district judge would have to try the issue every time in order to put it completely to rest.

Admittedly two circuits have treated the amendment as making vessel status an issue of district court subject matter jurisdiction, although only one involved the forfeiture issue. See United States v. Bustos-Usche, 273 F.3d 622, 626 (5th Cir. 2001); United States v. Tinoco, 304 F.3d 1088, 1105 (11th Cir. 2002). But neither decision made a detailed examination of the problem; both leapt, we think too quickly, from the bare reference to jurisdiction to the assumption that Congress was talking about the subject matter jurisdiction of the court.

---

[2]Similarly, the House Conference Report stated: "The Conference substitute establishes new law enforcement provisions which expand the Government's prosecutorial effectiveness in drug smuggling cases . . . . Jurisdictional issues would always be issues of law to be decided by the trial judge, not issues of fact to be decided by the jury." H.R. Conf. Rep. 104-854, at 142 (1996), reprinted in 1996 U.S.C.C.A.N. 4292, 4337.

Certainly by providing for a judge to decide the vessel issue rather than jury, Congress has introduced a possible Sixth Amendment objection to the statute. See United States v. Gaudin, 515 U.S. 506, 512-16 (1995). A defendant might claim, if the issue were tried, that he was entitled to a jury trial on whether the boat was a stateless vessel; on the other hand there are lots of issues (e.g., recusal of the judge, suppression of evidence, standing to assert a defense, constitutional challenge to a statute) normally not tried to the jury. In all events, Gonzalez' guilty plea made the mode of trial here a moot issue.

To sum up, the unconditional guilty plea forfeited Gonzalez' claim that the speed boat was other than a stateless vessel. Although the result would likely be the same even if we reached the merits (as the concurring opinion forcefully suggests) the question whether such a claim can be forfeited is an important recurring issue that needs to be resolved. Having resolved it in favor of forfeiture, it is enough to hold that Gonzalez had no more than an arguable claim which he bargained away in favor of an agreed-upon sentence.

Affirmed.

**- Concurring opinion follows -**

**TORRUELLA**, <u>Circuit Judge</u> (Concurring in the judgment).

I respect the majority's effort to discern and follow the intent of Congress's 1996 amendment to the Maritime Drug Law Enforcement Act ("MDLEA"). However, I believe that a plain reading of the statute, supported by rules of interpretation, legislative history and case law, clearly make the statelessness of a vessel a jurisdictional matter that is not waived by an unconditional guilty plea. I would reach the merits of González's claim, and concur in the judgment of the court.

## I. Background

On April 27, 1999, the captain of a sailing vessel rescued González and Manuel Polanco, both Dominican Republic nationals, from a go-fast boat[3] that was two-thirds submerged on the high seas approximately eighteen nautical miles southwest of the British Virgin Islands. González requested a hammer from his rescuer and used it to attempt to make holes in the hull of the boat. Noting this suspicious behavior, the captain videotaped González and reported the incident to the Coast Guard. González and Polanco claimed that two English citizens had also been aboard the vessel when it began to sink.

The Coast Guard arrived at the partially submerged vessel to conduct a search and rescue mission for the reportedly missing

---

[3]This is a small boat, customized with additional engines and fuel tanks for added speed and range. Experience tells us that such boats play a large role in the drug trade.

men.[4]  No one was found in the immediate vicinity.  Additionally, a team of three Coast Guardsmen approached the vessel and reported that it was a go-fast vessel, with no identifying marks or numbers on the bow.  No further evidence of registration or nationality was found when Coast Guard personnel dove into the water to survey the vessel.  This initial inspection did not reveal any contraband.

Having determined that the vessel was a hazard to navigation, the Coast Guard obtained permission to sink it.  After about fifteen minutes of firing at the boat, Coast Guard personnel returned to the vessel.  At this time, a hatch that had previously been inaccessible was open, and a package of cocaine was discovered.  In all, Coast Guard personnel confiscated  233 kilograms of cocaine before the vessel sank.

On April 30, 1999, González and Polanco were deported from the British Virgin Islands and were arrested, and subsequently indicted, upon arrival in San Juan, Puerto Rico.

On November 29, 1999, González and Polanco moved to dismiss their indictment for lack of jurisdiction.  The district court denied the motion, to which defendants timely objected.  González entered an unconditional guilty plea, from which he now appeals.

---

[4]The record is unclear as to whether there actually were other passengers, but the search and rescue mission was abandoned later that evening.

## II.  González's Jurisdictional Claim

## A.  Availability of Appeal

The MDLEA makes it a crime for any person on board "a vessel subject to the jurisdiction of the United States . . . to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance." 46 U.S.C. app. § 1903(a) (emphasis added).  A "vessel subject to the jurisdiction of the United States" includes "a vessel without nationality," or a stateless vessel.  46 U.S.C. app. § 1903(c)(1)(A).  González asserts that the vessel in this case was not subject to the jurisdiction of the United States because it was not a stateless vessel.

The majority holds that González's unconditional guilty plea has waived this challenge.  I disagree.  González's unconditional guilty plea admitted only the elements of the charged offense.  See United States v. Broce, 488 U.S. 563, 570 (1989).  As such, he waived all appeals other than jurisdictional defects.  See Tollett v. Henderson, 411 U.S. 258, 267 (1973); United States v. Cordero, 42 F.3d 697, 698-99 (1st Cir. 1994).  A jurisdictional defect "calls into doubt a court's power to entertain a matter," Cordero, 42 F.3d at 699, thus depriving the federal court of jurisdiction.  A jurisdictional defect may be raised by the party or sua sponte by the court at any point in the litigation.  See Freytag v. Commissioner, 501 U.S. 868, 896-97 (1991) (Scalia, J.,

-12-

concurring).  In this case, González argues that the district court lacked jurisdiction to accept his guilty plea because the United States did not have jurisdiction over the vessel from which he was rescued.  The issue is therefore whether the requirement that the vessel be "subject to the jurisdiction of the United States" is a factual predicate for federal jurisdiction.  If so, then González has not waived this issue.  However, if it is a substantive element of the crime, then the issue has been waived.

Although determining whether an issue is jurisdictional and thus appealable is not always easy, here, the plain language of the statute provides the answer.  In 1996, Congress added the following to the MDLEA:  "Jurisdiction of the United States with respect to vessels subject to this chapter is not an element of any offense.  All jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge."  46 U.S.C. app. § 1903(f).  The legislature is responsible for identifying the elements of an offense, see Liparota v. United States, 471 U.S. 419, 424 (1985), and it clearly removed jurisdiction as an element of the MDLEA.  See United States v. Tinoco, No. 01-11012, 2002 U.S. App. LEXIS 18479, at *46 (11th Cir. Sept. 4, 2002) ("The statutory language of the MDLEA now unambiguously mandates that the jurisdictional requirement be treated only as a question of subject matter jurisdiction for the court to decide.").  The text of the statute is unambiguous: Whether

-13-

or not the vessel was stateless, and therefore "subject to the jurisdiction of the United States," is not an element of the offense. It has been made jurisdictional and, as such, is appealable.[5]

The word "jurisdiction" can be confusing, but there is support for the reading that jurisdiction over the vessel is a subject matter jurisdiction determination. First, while it is true that the district courts have jurisdiction, "exclusive of the courts of the States, of all offenses against the laws of the United States," 18 U.S.C. § 3231, Congress can attach additional jurisdictional requirements in substantive criminal statutes, and did so here. Tinoco, 2002 U.S. App. LEXIS 18479, at *42 n.18. Under the MDLEA, the district court's jurisdiction extends only so far as a vessel is subject to the jurisdiction of the United States. See 46 U.S.C. app. § 1903. If a defendant is apprehended on a vessel not subject to the jurisdiction of the United States, the

---

[5]Appellees rely heavily on Valencia v. United States, 923 F.2d 917 (1st Cir. 1991), our only previous decision to discuss the issue of whether statelessness, specifically, is a jurisdictional determination. There, we noted that "the issue is not free from doubt," but opined that statelessness should not be appealable following a valid guilty plea. Id. at 921. These comments are mere dicta, as our decision was based on other grounds. Id. at 922 (vacating petitioner's guilty plea because it was not knowing and intelligent). Of critical importance is the date of Valencia, which was decided five years before Congress amended the MDLEA, removing jurisdiction as an element of the crime. Therefore, Valencia is neither controlling nor persuasive on this issue.

-14-

MDLEA does not apply, and the defendant clearly may not be charged under the MDLEA in district court.

This differs from laws where Congress attaches a "jurisdictional" element to enable it to act under its enumerated powers. For example, in many cases, Congress can only criminalize activities that substantially affect interstate commerce, so statutes often include a statement limiting their reach as such. See, e.g., 18 U.S.C. § 1951(a) (criminalizing only conduct which "obstructs, delays, or affects commerce or the movement of any article or commodity in commerce"). In those cases, the jurisdictional element is critical to Congress's ability to legislate, and therefore is likely an element of the crime. In contrast, Congress obtains authority to regulate drug trafficking on the high seas under the "protective principle" of international law, which permits a nation "'to assert jurisdiction over a person whose conduct outside the nation's territory threatens the nation's security.'" United States v. Cardales, 168 F.3d 548, 553 (1st Cir. 1999) (quoting United States v. Robinson, 843 F.2d 1, 3 (1st Cir. 1988)). Congress invoked the protective principle in the MDLEA, finding that "trafficking in controlled substances aboard vessels is a serious international problem and is universally condemned [and] . . . presents a specific threat to the security . . . of the United States." 46 U.S.C. app. § 1902; accord Cardales, 168 F.3d at 553. Because of this authority, the MDLEA does not require a

-15-

jurisdictional statement to place it within Congress's regulatory power. The jurisdictional statement of the MDLEA is therefore not an essential element of the crime, as it may be in other statutes that lack outside authority.

Second, the "elements" of a crime traditionally include the actus reus, causation, and mens rea. See Black's Law Dictionary 520 (6th ed. 1990). Whether or not a vessel is "subject to the jurisdiction of the United States" does not go to any of these traditional elements. For example, in Ford v. United States, 273 U.S. 593 (1927), the defendants were charged with carrying liquor during the Prohibition era on the high seas, in violation of a treaty between the United States and Great Britain. Id. at 601. The defendants contended that they were not within the zone of the treaty. Id. at 604. The Court held this was a jurisdictional issue for the judge to decide because "[t]he issue whether the ship was seized within the prescribed limit did not affect the question of the defendants' guilt or innocence. It only affected the right of the court to hold their persons for trial." Id. at 606. Similarly, whether a vessel is within the jurisdiction of the United States for purposes of the MDLEA is a proper question for the judge, as it bears upon the right of the court to entertain the claim. See Tinoco, 2002 U.S. App. LEXIS 18479, at *59 ("[T]he § 1903 jurisdictional requirement is not an essential ingredient or an essential element of the MDLEA substantive offense"); see also

United States v. Smith, 282 F.3d 758, 766 (9th Cir. 2002) (holding that § 1903(f) empowers the court to determine "whether the United States had jurisdiction over the place where the vessel was allegedly intercepted," while the jury determines "whether the vessel was actually intercepted at that place").

Third, the legislative history of the 1996 MDLEA amendments does not conflict with my interpretation. The limited legislative history suggests that the 1996 amendments were made to "expand the Government's prosecutorial effectiveness in drug smuggling cases." H.R. Conf. Rep. No. 104-854, at 142 (1996), reprinted in 1996 U.S.C.C.A.N. 4294, 4337; accord Statement by President William J. Clinton, October 19, 1996, reprinted in 1996 U.S.C.C.A.N. 4341, 4341 (stating that the amendments "strengthen[] the hand of prosecutors in drug smuggling cases," and clarify United States jurisdiction over vessels in international waters.). Removing jurisdiction as an element of the crime may ease prosecution under the MDLEA. For example, in Smith, 282 F.3d at 758, the defendant appealed his conviction under the MDLEA because the jury was not required to find that he was on a vessel subject to the jurisdiction of the United States. Id. at 765. The court held that the district court properly determined that the United States had jurisdiction over the area where the vessel was found,

-17-

pursuant to § 1903(f).  Id. at 766.[6]  The issue was therefore properly removed from the jury and not available as an avenue of appeal to the defendant.  So, while the amendment might allow a defendant to attack the jurisdiction of the United States following a guilty plea, at trial it eases prosecution by permitting the Government to establish, as a matter of law, that the area was subject to the jurisdiction of the United States.

Finally, I note that this is not the first time we have considered this issue, although we have never conclusively decided it.  See Cardales, 168 F.3d at 554 n.3 (noting that jurisdiction is no longer an element of the MDLEA); United States v. Guerrero, 114 F.3d 332, 340 n.9 (1st Cir. 1997) (same).[7]  Also, two other circuits

---

[6]The court further held that whether or not the vessel was found in that location was a jury question.  Id.  Whether this factual inquiry is a jury question is disputed, see Tinoco, 2002 U.S. App. LEXIS 18479, at *61 n.22 (holding that the judge should determine both whether the area was within the jurisdiction of the United States and whether the vessel was discovered in that area), but need not be resolved here.

[7]Our decision in United States v. Valdez-Santana, 279 F.3d 143 (1st Cir. 2002) is not at odds with my position.  In Valdez-Santana, appellants pled guilty under 21 U.S.C. § 952(a), which prohibits the importation of controlled substances.  Id. at 145-46.  The United States claimed authority to board appellants' boat as a "hovering vessel," as defined by 19 U.S.C. § 1401(k)(1).  Id. at 145.  Appellants argued that the boat was not a "hovering vessel," and the evidence seized during this boarding was therefore obtained in violation of federal laws.  Id. at 146.  We held that the issue of whether a vessel was a "hovering vessel" under 19 U.S.C. § 1401(k)(1) is not appealable as a jurisdictional element, because it is an element of the offense.  Id.  The instant case is different because the statute González was charged under applies only to "vessels subject to the jurisdiction of the United States," a requirement which the statute specifically states is not an

-18-

which have considered this issue have reached the same result as I have.  See Tinoco, 2002 U.S. App. LEXIS 18479, at \*46; United States v. Bustos-Useche, 273 F.3d 622, 626 (5th Cir. 2001), cert. denied, 2002 U.S. LEXIS 3486 (May 13, 2002) (finding jurisdiction over a vessel under the MDLEA subject to appeal following a guilty plea). The only case to the contrary is United States v. Ramos, No. 01-50356, 2002 U.S. App. LEXIS 20369, at \*4 (9th Cir. Sept. 20, 2002), an unpublished, three paragraph opinion which lacks any analysis of the issue.

To summarize, I believe that by the 1996 amendment, whether or not a vessel is subject to the jurisdiction of the United States is not an element of the offense under the MDLEA, but a question of subject matter jurisdiction for the court to decide. It goes to the power of the court to hear the case, and such a jurisdictional determination cannot be waived by a guilty plea.

## B.  **Statelessness Analysis**

Since I believe the statelessness of the vessel is a jurisdictional determination, I review González's challenge de novo. Seahorse Marine Supplies, Inc. v. Puerto Rico Sun Oil Co., 295 F.3d 68, 73 (1st Cir. 2002).  Reviewing this issue on appeal is not complicated, as the record contains all facts relevant to whether or not the vessel was stateless.

---

element of the offense.  46 U.S.C. app. § 1903 (a), (f).  González has therefore not waived his right to appeal the statelessness of the vessel.

-19-

González is neither a citizen nor a resident alien of the United States, and the vessel involved was not a vessel of the United States.  Thus, for González to be prosecuted under the MDLEA, the vessel must be "subject to the jurisdiction of the United States."  46 U.S.C. app. § 1903(a).  On our facts, his vessel could only be subject to the jurisdiction of the United States if it is "a vessel without nationality," also known as a stateless vessel.  46 U.S.C. app. § 1903(c).  According to the MDLEA,

> a "vessel without nationality" includes:
> (A) a vessel aboard which the master or person in charge makes a claim of registry,[8] which claim is denied by the flag nation whose registry is claimed;
> (B) any vessel aboard which the master or person in charge fails, upon request of an officer of the United States empowered to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and
> (C) a vessel aboard which the master or person in charge makes a claim of registry and the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

46 U.S.C. app. § 1903(c)(2).  González argues that the requirement of statelessness can only be satisfied in one of two ways, neither of which was satisfied in this case: when the master makes a claim of registry which is denied (or not assented to) by the flag nation,

---

[8]A claim of registry only includes documentation of a vessel's nationality, flying a nation's flag, or a verbal claim of nationality or registry by the master or person in charge.  46 U.S.C. app. § 1903(c)(3).  It is undisputed that there was no claim of registry made in this case.

or when the master fails, upon request, to make a claim of registry. González asserts that the vessel cannot be deemed "stateless" because the master did not make a claim of registry or fail to make a claim of registry.

González's argument must fail. The statute does not provide an exhaustive list of the ways that a vessel can be determined to be stateless, but uses the word "includes," and lists three examples. An expansive reading furthers the Congressional intent of reaching the widest range of drug smuggling cases possible under international law. If Congress had intended to provide an exclusive list, it could have used the phrase "only includes," as it did in the following subsection. 46 U.S.C. app. § 1903(c)(3); see also United States v. Rosero, 42 F.3d 166, 170 (3d Cir. 1994); United States v. Valdez, 84 F. Supp. 2d 237, 238 (D.P.R. 1999).

Although I have not found any cases with facts similar to the present case, that is, where no one was aboard the vessel when it was approached, I do not think it is a stretch to say that an unoccupied vessel completely lacking in evidence of registry or nationality is a stateless vessel. See L. Oppenheim, 1 International Law, 595-96 (H. Lauterpacht 8th ed. 1955) (noting that a stateless vessel is one sailing under the flags of two or more states, or under no flag at all). The United States is a party to the Convention on the High Seas, a codification of the customary laws of the high seas, which requires all ships to sail under a

nation's flag. Convention on the High Seas, Apr. 29, 1958, art. 6, 13 U.S.T. 2312, 450 U.N.T.S. 82 ("Ships shall sail under the flag of one State only . . . ." (emphasis added)).[9] González has not claimed that the vessel is authorized to fly under the flag of any nation. More importantly, at the time it was boarded by the Coast Guard, the vessel was not flying any flag.

González argues that the Coast Guard, knowing he was being treated in the British Virgin Islands, should have attempted to question him or Polanco about the vessel's nationality and/or registry. González insists that a vessel can only be deemed stateless following such an inquiry. I disagree. The MDLEA's examples of when a vessel is without nationality all presume the presence of a master or person in charge. See 46 U.S.C. app. § 1903(c)(2). Appellant, who had indisputably occupied a drug-ridden boat that had no master or evidence of registry, should not have immunity from seizure and federal prosecution simply because he was rescued before the Coast Guard arrived. Cf. United States v. Rosero, 42 F.3d 166, 174 (3d Cir. 1994) ("Under [46 U.S.C. app. § 1903(c)(2)(B)], if the master or person in charge fails, upon request, to make any claim of nationality or registry, the vessel may be regarded as stateless. By clear implication, we believe, this provision applies when the master of a ship flees and leaves

---

[9]Congress was aware of international law principles, and the Convention on the High Seas in particular, when enacting the MDLEA. See 46 U.S.C. app. § 1903(b)(2) and (c)(3)(A).

-22-

no one in charge . . . ."). An unoccupied boat, completely lacking in identifying markers, is a stateless vessel. As such, the district court properly asserted its jurisdiction in this case.

### III. González's Other Claims

González challenges the sufficiency of the evidence and raises a Fourth Amendment challenge. Because these are not jurisdictional attacks, they are clearly foreclosed by González's unconditional guilty plea. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); see also Cordero, 42 F.3d at 698 ("[A]n unconditional guilty plea effectuates a waiver of any and all independent non-jurisdictional lapses that may have marred the case's progress up to that point . . . .").

### IV. Conclusion

I believe that González's only viable claim on appeal is whether the district court had subject matter jurisdiction to accept his guilty plea. I find that jurisdiction was present because González was aboard a "vessel without nationality" for purposes of the MDLEA, and therefore concur in the judgment of the court.