LYNCH and HOWARD, Circuit Judges,
opinion of the court in part and concurring in part.
We join Judge Torruella’s opinion except as to Part 11(A) (“Constitutionality of the MDLEA”). We write separately to address the constitutionality of 46 U.S.C. § 70504(a), a question Judge Torruella’s opinion bypasses.
We hold that there is no constitutional infirmity in Congress’s explicit allocation in § 70504(a) of the question of whether a vessel is “subject to the jurisdiction of the United States” to the court rather than the jury for decision. That allocation was well within the power of Congress.
Vilches did not raise a challenge to the statute’s constitutionality in the district court and so our review is for plain error. United States v. JG-24, Inc., 478 F.3d 28, 32 (1st Cir.2007). To establish plain error, Vilches must demonstrate that “(1) there was error; (2) the error was plain; (3) the error affected [his] substantial rights; and (4) the error adversely impacted the fairness, integrity, or public reputation of judicial proceedings.” United States v. Riggs, 287 F.3d 221, 224 (1st Cir.2002). We resolve this claim at the first step on the grounds that there was no error at all. See, e.g., United States v. Arango, 508 F.3d 34, 43 (1st Cir.2007); United States v. Vargas, 471 F.3d 255, 264 (1st Cir.2006); United States v. Morales-Rodriguez, 467 F.3d 1, 16 (1st Cir.2006).
Under 46 U.S.C. § 70503(a)(1), an individual “may not knowingly or intentionally manufacture or distribute, or possess with intent to distribute, a controlled substance on board ... a vessel of the United States or a vessel subject to the jurisdiction of the United States.” In 1996, Congress moved to end the disagreement among lower courts as to whether the determination that a vessel was subject to the jurisdiction of the United States was committed to a jury or a judge. Congress did so by inserting a provision explicitly providing that jurisdiction under this statute is a preliminary question for the judge and is not an element of the crime that must be submitted to the jury. The statute, 46 U.S.C. § 70504(a), provides that “[jurisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense. Jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge.”
To date one circuit has upheld the constitutionality of this provision. United States v. Tinoco, 304 F.3d 1088, 1111 (11th Cir.2002). One circuit has held the provision unconstitutional. United States v. Perlaza, 439 F.3d 1149, 1167 (9th Cir.2006).
In this case, the Coast Guard sought permission from Honduras to board the vessel Babouth, which was flying a Honduran flag. The prosecution submitted a certificate from the Secretary of State as verification that the United States received such permission from Honduras.[11] Vilches argues that the vessel was not subject to the jurisdiction of the United States and *20 the government failed to make the required showing that it was. The argument we address is his contention that § 70504(a) is unconstitutional because, by assigning the issue to a judge, the statute violates his Fifth and Sixth Amendment rights to have every element of a criminal offense decided by a jury beyond a reasonable doubt. We disagree. This issue is not an element of the crime in the requisite sense and may be decided by a judge.
Congress enjoys latitude in determining what facts constitute elements of a crime which must be tried before a jury and proved beyond a reasonable doubt and which do not. See, e.g., Staples v. United States, 511 U.S. 600, 604, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (noting that the “definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute” (quoting Liparota v. United States, 471 U.S. 419, 424, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985)) (internal quotation mark omitted)); McMillan v. Pennsylvania, 477 U.S. 79, 86, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (“[W]e should hesitate to conclude that due process bars the State from pursuing its chosen course in the area of defining crimes and prescribing penalties.”).
This discretion about allocation of functions between judge and jury is subject to some limits. See Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).[12] Congress acted well within constitutional boundaries in determining that the question of whether a vessel is “subject to the jurisdiction of the United States” is not an essential element of § 70503(a)(1) for several reasons.
First, § 70504(a) is constitutional under the Supreme Court’s teaching in McMillan. The Pennsylvania statute at issue there provided that anyone convicted of certain felonies was subject to a mandatory minimum sentence of five years’ imprisonment if the sentencing judge (and not the jury) found, by a preponderance of the evidence, that the person visibly possessed a firearm while committing the offense. McMillan, 477 U.S. at 81, 106 S.Ct. 2411. The Supreme Court upheld this allocation of functions on the basis of several factors, see id. at 86-90, 106 S.Ct. 2411, noting that it was unable “to lay down any ‘bright line’ test” but concluding that Pennsylvania’s Mandatory Minimum Sentencing Act “falls on the permissible side of the constitutional line,” id. at 91, 106 S.Ct. 2411. The Court did point out that the statute did not create any presumption against the defendant’s innocence, that the finding of visible possession did not increase the penalty to which the defendant was subject but rather cabined the court’s discretion within the statutory range, and that Pennsylvania did not appear to be restructuring an existing crime in order to evade the constitutional requirement of proof beyond reasonable doubt.[13] Id. at 86-90, 106 S.Ct. 2411. All of these considerations apply equally to Congress’s decision that the “subject to jurisdiction” issue is not an element of § 70503(a)(1) and may be decided by a judge: the presumption of a defendant’s innocence is not affected; the underlying determination does not subject the defendant to an increased penalty; and there is no evidence that Congress was attempting to evade defendants’ constitutional rights.[14]
*21 Second, in determining whether legisla-tees have transgressed constitutional boundaries in defining elements of a crime, the Supreme Court has given great weight to the historic treatment of particular categories of facts. This is true whether the allocation concerns sentencing, see, e.g., Harris v. United States, 536 U.S. 545, 560-61, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (considering historical practice in determining that facts increasing a minimum sentence need not be submitted to a jury), or the elements of a statutory crime, see, e.g., United States v. Gaudin, 515 U.S. 506, 515, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (“We do not doubt that historical practice is relevant to what the Constitution means by such concepts as trial by jury ... and it is precisely historical practice that we have relied on in concluding that the jury must find all the elements.”).
Under historical practice the determination of whether a vessel is subject to the jurisdiction of the United States would not be an essential element of the offense. At common law, the elements of an offense included “each part of the actus reus, causation, and the mens rea” that the government needed to establish in order to obtain a conviction. Tinoco, 304 F.3d at 1108 (citing Black’s Law Dictionary 520 (6th ed.1990)). Section 70503(a)(1) criminalizes the knowing or intentional manufacture, distribution, or possession with intent to distribute a controlled substance on board a vessel. Whether a vessel was subject to the jurisdiction of the United States has no bearing on whether defendants manufactured, distributed, or possessed with intent to distribute a controlled substance or whether they did so knowingly or intentionally. The question of whether a vessel is subject to the jurisdiction of the United States thus does not relate to whether a defendant committed the proscribed actus reus or possessed the necessary mens rea. As such it does not meet the common law definition of an element.
The Supreme Court’s decision in Ford v. United States, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1927), provides strong historical support that the question of whether a vessel is subject to the jurisdiction of the United States is not an element of a crime involving a vessel. In Ford, the defendants were charged with a Prohibition-era conspiracy to transport liquor into the United States in violation of a treaty between the United States and Great Britain. Id. at 600, 47 S.Ct. 531. The Supreme Court held that whether the vessel was seized within the zone covered by the treaty and therefore subject to the jurisdiction of the United States was not an issue a jury needed to decide; “The issue whether the ship was seized within the prescribed limit did not affect the question of the defendants’ guilt or innocence. It only affected the right of the court to hold their persons for trial.” Id. at 606, 47 S.Ct. 531.
Third, the argument that this “subject to jurisdiction” question is not an element of the § 70503(a)(1) crime is strengthened by the fact that Congress did not need to include a provision in the MDLEA that the vessel be subject to the jurisdiction of the United States. Under the “protective principle” of international law, Congress can punish crimes committed on the high seas regardless of whether a vessel is subject to the jurisdiction of the *22 United States. Under the protective principle, “[a] state has jurisdiction to prescribe a rule of law attaching legal consequences to conduct outside its territory that threatens its security as a state or the operation of its governmental functions, provided the conduct is generally recognized as a crime under the law of states that have reasonably developed legal systems.” United States v. Gonzalez, 776 F.2d 931, 940 n. 11 (11th Cir.1985) (quoting Restatement (Second) of Foreign Relations Law of the United States § 33(1)) (internal quotation marks omitted); see also Restatement (Third) of Foreign Relations Law § 402 & cmt. f (restating protective principle). In United States v. Cardales, 168 F.3d 548 (1st Cir.1999), this court noted that “application of the MDLEA to the defendants is consistent with the protective principle of international law because Congress has determined that all drug trafficking aboard vessels threatens our nation’s security.” Id. at 553; accord United States v. Gonzalez, 311 F.3d 440, 446 (1st Cir.2002) (Torruella, J., concurring in the judgment) (because the protective principle applies, “the MDLEA does not require a jurisdictional statement to place it within Congress’s regulatory power. The jurisdictional statement of the MDLEA is therefore not an essential element of the crime, as it may be in other statutes that lack outside authority.”). If the statute need not have had a “subject to jurisdiction” component at all, that component is not an essential element of the crime unless Congress so intends.
In fact, there is a ready explanation for the presence of the “subject to jurisdiction” provision in the statute, an explanation which reinforces the conclusion that the finding as to jurisdiction is not an element of the crime. Congress inserted the requirement that a vessel be subject to the jurisdiction of the United States into the statute as a matter of diplomatic comity. See Tinoco, 304 F.3d at 1108 (“[T]he jurisdictional requirement was inserted into the statute as a diplomatic courtesy to foreign nations and as a matter of international comity....”). To put the concept in different terms, “It is misleading ... to consider [a foreign nation’s] consent an element of the offense; rather, it is a diplomatic requisite illustrating the international partnership that ensures the rule of law on the high seas.” Gonzalez, 776 F.2d at 940 (emphasis omitted).
We acknowledge that one circuit has decided the question differently. The Ninth Circuit held in Perlaza that § 70504(a)’s allocation of the jurisdictional issue to the judge is unconstitutional based on two primary rationales. First, the court reasoned that because many courts had thought, before the congressional clarification in 1996, that a jury was required to determine the jurisdiction question, Congress could not alter that arrangement. Perlaza, 439 F.3d at 1167. Second, Perlaza reasoned that because the jurisdictional inquiry involves factual questions, that meant it had to be an element of the crime. Id. We disagree on both points. Congress ordinarily defines crimes and can alter statutes to clarify or overrule judicial opinions. See, e.g., Cleveland v. United States, 531 U.S. 12, 19-20, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000) (describing how Congress amended the federal mail fraud statute to expand the coverage given to it by the Court). A congressional decision on how to define elements of a crime is usually dispositive. See Staples, 511 U.S. at 604-05, 114 S.Ct. 1793. Judicial interpretations given to allocations of functions between judge and jury under one version of a statute do not determine the constitutionality of a later, revised version in which Congress has made a different allocation. Moreover, as to the second rationale, it is well established that juries need not decide *23 all questions with factual components. For example, the admissibility of evidence and the legality of searches and seizures are committed to judges. See, e.g., Gaudin, 515 U.S. at 525-26, 115 S.Ct. 2310 (Rehnquist, C.J., concurring).
Judge Torruella is of the view the question should be avoided, citing the doctrine of constitutional avoidance. The doctrine of constitutional avoidance is no bar to reaching the question of the constitutionality of § 70504(a) in this case. The Supreme Court has not treated constitutional avoidance as a strict rule but rather as a prudential consideration that judges should take into account on a case-by-case basis. Rescue Army v. Mun. Court of Los Angeles, 331 U.S. 549, 574, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947); see also, e.g., Zobrest v. Catalina Foothills Sch. Dist., 509 U.S. 1, 7-8, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993) (majority reaches constitutional issue over the dissent’s constitutional avoidance argument). In particular, the Supreme Court has departed from the doctrine in the contexts of harmless error analysis, see, e.g., Pope v. Illinois, 481 U.S. 497, 501-04, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987), and the good-faith exception to the exclusionary rule, see, e.g., United States v. Leon, 468 U.S. 897, 925, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). And, in the qualified immunity context, the Court has told lower courts to reach constitutional issues in order to provide guidance on constitutional issues. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (“[I]f the policy of avoidance were always followed ..., standards of official conduct would tend to remain uncertain, to the detriment of both officials and individuals.”); see also Pierre N. Leval, Judging Under the Constituiion: Dicta About Dicta, 81 N.Y.U.L.Rev. 1249, 1277 (2006) (noting tension between the Saucier rule and the doctrine of constitutional avoidance).
The constitutionality of 46 U.S.C. § 70504(a) is a recurring issue which this court has avoided reaching before. See, e.g., United States v. Gil-Carmona, 497 F.3d 52, 54 (1st Cir.2007); see also Gonzalez, 311 F.3d at 443 (holding that defendant waived this argument by pleading guilty). The avoidance doctrine, of course, is not meant to thwart the even more fundamental doctrine governing all judges that the view of the majority is the holding of the court. We think it is important to resolve the question now in order to provide clear guidance to the district judges of this circuit and to litigants on how to handle this issue. Cf. Leon, 468 U.S. at 925, 104 S.Ct. 3405 (“If the resolution of a particular Fourth Amendment question is necessary to guide future action ..., nothing will prevent reviewing courts from deciding that question before turning to the good-faith issue.”). The question is clearly raised in this case. We do not think the issue is particularly difficult and so there is no reason to avoid the question because it is hard or close. Indeed, the outcome is mandated by Supreme Court precedent.
We hold that § 70504(a) is constitutional and dispose of the plain error inquiry at the first step. We otherwise join in Judge Torruella’s opinion.

. Under 46 U.S.C. § 70502(c)(2)(B), the consent of a foreign nation to the enforcement of United States law by the United States is "proved conclusively by certification of the Secretary of State or the Secretary's desig-nee."

. Apprendi does not govern § 70504(a) because this provision does not increase the statutory penalty but rather serves as a prerequisite for guilt.

. The Court also noted that it was irrelevant that other state legislatures had treated visible possession as an element of various crimes. McMillan, 477 U.S. at 90, 106 S.Ct. 2411.

.McMillan remains good law after the Supreme Court’s holding in Apprendi. Apprendi, *21 530 U.S. at 487 n. 13, 120 S.Ct. 2348; see also Harris v. United States, 536 U.S. 545, 563, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) ("Apprendi's conclusions do not undermine McMillan s. There was no comparable historical practice of submitting facts increasing the mandatory minimum to the jury, so the Apprendi rule did not extend to those facts.”).